PARK, District Judge (Retired).
[¶1] A jury convicted Rebel Scott Kuebel of misdemeanor theft and felony property destruction. Mr. Kuebel appeals, asserting that the prosecutor committed misconduct; he was entitled to a judgment of acquittal for destruction of property because he only disassembled and did not destroy the property; he was entitled to a judgment of acquittal on a charge of theft because the victims had no ownership interest in the property; and that the district court abused its discretion in awarding restitution.
[¶2] We affirm.
ISSUES
[¶3] Appellant raises four issues:
1. Did the prosecutor commit misconduct when three of the State's witnesses provided nonresponsive answers suggesting that Mr. Kuebel sold motorcycle parts when there was no evidence of such sales?
2. Was Mr. Kuebel entitled to a judgment of acquittal on the charge of property destruction of the 1988 Harley Davidson when it was only disassembled?
3. Was Mr. Kuebel entitled to a judgment of acquittal on the charge of theft of a 1972 Norton motorcycle because the victims did not reserve an ownership interest in this motorcycle when they sold their business to Mr. Kuebel?
4. Did the district court abuse its discretion in awarding $2,500.00 in restitution after the jury convicted him of misdemeanor theft?
FACTS
[¶4] Thomas and Lucinda Collins owned a business in Wheatland, Wyoming, known as West Wind Cycles. The primary purpose of this business was motorcycle repairs and parts. In 2013, Mr. Collins was seriously injured and the Collinses decided Mr. Collins *182 could no longer operate the business, so they resolved to sell it.
[¶5] The Collinses had known Mr. Kuebel since he was a child. Mr. Kuebel had moved back to Wheatland from Utah and had heard about Mr. Collins' accident. He was trying to help Mr. Collins through the week of the motorcycle rally in Sturgis, South Dakota. The Collinses retained a local attorney and they sold their business to Mr. Kuebel and Ms. Stephanie Menzies on a contract for deed. Mr. Kuebel fell behind on his payments and the parties entered into a second contract. The second contract included missed payments and interest and substituted Ms. Rebecca Schwartz for Ms. Menzies. Eventually, Mr. Kuebel failed to make payments under the second contract and the Collinses took back the property.
[¶6] When the Collinses sold the business, they retained several motorcycles: two Harley Davidsons, a 1979 Sportster and a 1988 FLHT; and three Nortons, a 1971, a 1972 and a 1973, although the 1973 was just a collection of parts. Mrs. Collins testified that both of the Harley Davidsons and two of the Nortons were operational. The motorcycles were all left in a locked shed located on the property that had been sold. The Collinses had titles for all of the motorcycles, except for the one being used for parts. They kept the titles in a safety deposit box.
[¶7] Mr. Collins testified that when he and his wife regained possession of the property, the 1988 Harley Davidson was missing the front engine cylinder, the connecting rods and pushrods, the rims and tires, the saddlebags, the front end, and the seat. The 1979 was missing a headlight, gas tank, seat, and carburetor. Later, part of the front end, the gas tank, and one muffler were returned to Mr. and Mrs. Collins. Neither of the operational Norton motorcycles were on the premises, and both Mr. Kuebel and his business partner testified they had been sold as junk.
[¶8] Mr. Kuebel was originally charged with four counts: two counts of felony theft in violation of Wyo. Stat. Ann. § 6-3-402(a) (LexisNexis 2017); and two counts of felony property destruction in violation of Wyo. Stat. Ann. § 6-3-201(a) (LexisNexis 2017). The first two counts are identical and do not reference any particular item or piece of property; likewise, the second two counts are also identical, and again, do not reference any piece of property. It would be impossible to determine from the Information what was alleged to have been stolen in the first two counts and what was alleged to have been damaged in the second two counts. At the end of the State's case, the Court, with the agreement of both parties, informed the jury that issues relating to the alleged theft of the 1971 Norton motorcycle had been resolved. Instruction No. 15 instructed the jury that Mr. Kuebel had been charged with three crimes: theft of a 1972 Norton motorcycle; property destruction and defacement of a 1979 Harley Davidson motorcycle; and property destruction and defacement of a 1988 Harley Davidson motorcycle.
[¶9] The jury found Mr. Kuebel guilty of misdemeanor theft of the 1972 Norton motorcycle, and guilty of felony property destruction and defacement relating to the 1988 Harley Davidson motorcycle. Mr. Kuebel was found not guilty of property destruction relating to the 1979 Harley Davidson motorcycle.
[¶10] Mr. Kuebel was sentenced to a term of four to six years for the felony property destruction. This sentence was suspended on the condition Mr. Kuebel complete five years of supervised probation. On the misdemeanor theft, Mr. Kuebel was sentenced to serve 180 days. This sentence was suspended on the condition Mr. Kuebel complete six months of probation, served concurrently with the felony probation. Mr. Kuebel was also ordered to pay restitution of $9,600 for the damage to the 1988 Harley Davidson and $2,500 for the theft of the 1972 Norton motorcycle. Additional facts will be presented as necessary to discuss the issues. Mr. Kuebel filed a timely appeal.
DISCUSSION
A. Did the prosecutor commit misconduct?
[¶11] Mr. Kuebel asserts the prosecutor committed misconduct by failing to properly control the State's witnesses, which caused *183 six non-responsive answers he claims resulted in his not being able to obtain a fair trial.
[¶12] The first exchange complained of occurred when the prosecutor was questioning Mrs. Collins:
Q. Early on you wanted to indicate about some things. Did you ever receive any property back on the 1988 motorcycle?
A. Yes.
Q. Okay. What property did you receive back?
A. We found the front end. Gentleman brought the front end back.
Q. Okay. Was it Mr. Kuebel that brought it back?
A. Oh, no. Oh, no.
(Defense counsel): I'm going to object to the tone of that answer, Your Honor. It's implying something towards my client.
THE COURT: Okay. Sustained. Ma'am, please avoid -- Just answer the questions, please.
THE WITNESS: Okay.
The second exchange took place later as defense counsel was cross examining Mrs. Collins:
Q. Okay. All right. But the engine and the front end are back?
A. The front end was returned because he sold it to somebody.
(DEFENSE COUNSEL). Okay. I'm going to object to that, Your Honor. I don't know the basis for --
THE COURT. Well, yeah. Ladies and gentlemen, disregard her last statement. So that will be stricken.
WITNESS: Sorry.
THE COURT: Go ahead and ask a question Mr. [Defense Counsel].
And please, ma'am, just answer the questions.
The third nonresponsive answer came as the prosecutor was questioning Mr. Collins. Mr. Collins testified he found the 1988 Harley Davidson motorcycle on a lift and stripped down. Then the following question and answer session took place:
Q. Were the parts there?
A. The parts were sold.
(Defense counsel). I'm going to object as to foundation. I don't know how he would have knowledge of this.
THE COURT: Well, sustained. It does lack foundation.
(DEFENSE COUNSEL). I would ask the Court to strike and instruct the jurors to disregard.
THE COURT. Yes. Ladies and gentlemen of the jury, that previously answer (sic) will be stricken and please disregard that.
The next answer of which Mr. Kuebel complains occurred when defense counsel was cross-examining Mr. Collins. Mr. Collins was asked what certain replacement parts would cost and he responded as follows:
A. It would depend. If I can get back into the swing of my business, I have accessibility to parts at a reasonable price.
Q. Okay.
A. But when I have to go chase down parts to fit that bike because somebody sold them for what I --
(DEFENSE COUNSEL). Okay, I'm going to object at this point, Your Honor. I have not in any way opened the door for this sort of slander.
THE COURT: Okay. Well, Mr. Collins, try to answer the question. That will be stricken and the jury will disregard that part.
Another objection arose later in the same cross-examination. Defense counsel was discussing with Mr. Collins whether Mr. Kuebel or Mr. Collins owned a shed which was on the property after the sale of the business and whether Mr. Kuebel had a key to that shed. Mr. Collins denied Mr. Kuebel had a key and, not in response to any question, said:
A. He tore the lock--
THE COURT: Sir, sir, I need you to wait until there's a question. Okay?
DEFENSE COUNSEL: I'm going to ask that that be stricken as well.
A. Sorry.
THE COURT: It will be stricken. Jury will disregard that.
The next exchange of which Mr. Kuebel complains took place as the prosecutor was questioning the Chief of Police:
*184 Q. Let's back up. We're talking about -- Did she report some motorcycles --
A. That was not the first thing she reported stolen.
(DEFENSE COUNSEL): I'm going to object at this point.
Your Honor. I think this is outside the scope of the case.
Q. Did you eventually get to the motorcycles?
A. After I got to West Winds Cycles, I was there for about five minutes talking to Cindy and Tommy Collins, and that's when she -- She reported vandalism first.
(DEFENSE COUNSEL): I'm going to object to that, Your Honor. I think it's hearsay and, in addition, it's again 404(b).
(PROSECUTOR): Just stick with the --
THE COURT: Stop. Stop. Okay. Yeah. The objection is sustained, so the jury will disregard that last answer.
Mr. Kuebel is critical of testimony given by the Chief of Police who was re-called as a rebuttal witness. Over objection, the Chief of Police testified that an outside party told him the front fork for the motorcycle, which had been returned to the Collinses, had been purchased by a third party. On cross-examination, the following exchange took place:
Q. Your claim is based upon what you're saying is that Mr. Moore -- Well, your claim is not based upon Mr. Evans' personal knowledge; you're saying that Mr. Evans tried to relay on to you something that he claims someone else told him?
A. I'm sorry. You lost me in the ...
Q. Did Mr. Evans ever claim to you that he had personal knowledge of a sale? In other words, that he was present during the sale?
A. He told me that somebody had paid 1500 for them.
(DEFENSE COUNSEL): I'm going to -- I'm going to object. This is all entirely hearsay, and I would ask the entirety of this gentleman's testimony be stricken. They're trying to backdoor hearsay in, and I think it's prosecutorial misconduct.
THE COURT: Well, okay. That's overruled. But counsel approach the bench.
After an off-the-record discussion, the Court ruled:
THE COURT: Ladies and gentlemen of the jury, there's been testimony about what somebody else told Mr. Evans. So I'm instructing you that that evidence is not to be considered by you of what somebody else told Mr. Evans. I'll instruct you not to consider that.
[¶13] After the State concluded with its rebuttal witness, defense counsel moved for a mistrial. He argued the prosecutor had elicited hearsay, and this had prejudiced the jury. The State explained it had called the Chief of Police to testify as to inconsistent statements made by Mr. Evans as to whether he had told the Chief that the motorcycle parts had been sold or not. The State argued it had called a rebuttal witness because of alleged inconsistent statements made by Mr. Evans. The Court denied the motion for a mistrial, indicating that the State had the right to rebuttal, and noting the jury had been instructed to disregard the testimony.
[¶14] When we are asked to review a trial objection complaining of prosecutorial misconduct, we must first determine whether there was misconduct resulting in an error; if so, then we apply a harmless error standard of review. King v. State, 2018 WY 52, ¶ 11, 417 P.3d 657, 660 (Wyo. 2018). In determining whether any error was harmless, we concentrate on whether the error has affected the defendant's substantial right to a fair trial. Black v. State, 2017 WY 135 ¶ 13, 405 P.3d 1045, 1050. An error impacts on a defendant's right to a fair trial if we find that, based on the entire record, "a reasonable possibility exists" if, but for the error, the defendant might have received a more favorable verdict. Id.
[¶15] Mr. Kuebel asserts the prosecutor had a responsibility to control the State's witnesses. His argument is that once a witness had provided an improper answer, it was foreseeable other witnesses would also volunteer inappropriate answers; therefore, he says, "it would have been incumbent upon the prosecutor" to caution his witnesses not to express improper opinions, and that the cumulative effect of the several nonresponsive *185 answers prejudiced the jury to the point he could not get a fair trial. The State responds that the contested answers were not solicited by the State, nor could they have been anticipated.
[¶16] A prosecutor's responsibility to control the State's witnesses has been addressed by this court. In Nelson v. State, 2010 WY 159, ¶ 35, 245 P.3d 282, 291 (Wyo. 2010), we noted that a prosecutor was not excused from the requirements of Rule 404(b) even though the State suggested the prosecutor did not intend to introduce the improper testimony. We noted that the "witness who gave the testimony ... was an experienced deputy sheriff and trained drug investigator working with the prosecutor to convict Ms. Nelson. It is difficult to believe the prosecutor had not discussed his testimony with him before trial. If the intent was not to have him testify about other drug sales, the prosecutor should have directed him not to do so." Id. We, however, distinguished Schreibvogel v. State, 2010 WY 45, 228 P.3d 874 (Wyo. 2010), and Reay v. State, 2008 WY 13, 176 P.3d 647 (Wyo. 2008).
[¶17] In Schreibvogel , we said that while there was testimony that related to Mr. Schreibvogel's drug use that potentially violated Rule 404(b), it did not appear from the record that, prior to trial, the State had intended to utilize the evidence of Mr. Schreibvogel's drug use. The witness was not asked to testify about Mr. Schreibvogel's drug use; he was only asked to testify about what he had been told by Mr. Schreibvogel. We held that if the prosecution did not intend to introduce such evidence, it was not required to provide the defense with notice. Schreibvogel , ¶ 35, 228 P.3d at 886.
[¶18] Reay also implicated improper 404(b) testimony. Rejecting the appellant's contention, we noted that "[T]he prosecution in Mr. Reay's case did not intend to introduce [the witness]' testimony as evidence of uncharged misconduct. The prosecution's question, -- 'Is that pretty much all that you got out of her?' -- was not an intentional attempt to solicit improper evidence. The district court concluded that the prosecution had not elicited the comment, and that the comment 'was somewhat nonresponsive.' The prosecution also assured the district court that [the witness] had been admonished not to testify about Mr. Reay's previous assaults against [the victim]. Because the prosecution did not intend to introduce such evidence, it was not required to provide the defense with notice that it would attempt to introduce the evidence." Reay , ¶ 19, 176 P.3d at 653.
[¶19] This case bears a closer resemblance to Schreibvogel and Reay than it does to Nelson , at least as far as the Collinses are concerned. There is nothing in the record to indicate Mr. and Mrs. Collins were witnesses who were used to being in court; in fact, the record suggests testifying in court was a new experience for them. The record also indicates the prosecution did not intend to introduce testimony to which Mr. Kuebel objected. Although the Chief of Police may be more experienced in testifying, it is clear from the record his comments were spontaneous and could not have been anticipated by the prosecution. Further, as noted below, the district court immediately sustained defense counsel's objections and instructed the jury to disregard his inappropriate statements.
[¶20] Martin v. State , 2007 WY 2, ¶ 27, 149 P.3d 707, 714 (Wyo. 2007) (abrogated on other grounds by Granzer v. State , 2010 WY 130, ¶ 27, 239 P.3d 640 (Wyo. 2010) ), is more closely on point. In Martin , the prosecutor asked a yes or no question, and the witness responded with an answer that arguably presented prejudicial information. This Court affirmed a denial of a mistrial noting that the answer was not responsive and there was nothing to indicate the nonresponsive answer should have been anticipated. The district court had specifically found the improper testimony was a spontaneous statement and not elicited by the State. This Court agreed the prosecutor was not responsible for the nonresponsive answer.
[¶21] Similar findings were made by the district court in the instant case. The district court found that the prosecutor had not done anything to encourage the contested answers. There is nothing in the record to dispute the district court's findings that the prosecutor was not responsible for the nonresponsive answers; therefore, there was no misconduct. The district court is in a better *186 position to evaluate any adverse effect improper testimony might have on a jury than we are as a reviewing court. In addition, the district court took immediate steps to correct any problematic testimony by ordering the jury to disregard all of the challenged answers. The assertion that the cumulative effect of the inappropriate answers denied Mr. Kuebel the right to a fair trial ignores our well-established rule that jurors follow curative instructions. Carrier v. State , 2017 WY 88, ¶ 45, 400 P.3d 358, 368 (Wyo. 2017).
[¶22] Mr. Kuebel does not explain why the prosecutor should have foreseen or anticipated further nonresponsive answers from the witness or from other witnesses. In this case, to further complicate matters, half of the nonresponsive answers came during cross examination. Categorization of these items as prosecutorial misconduct would require the prosecutor to accurately predict both the question and an inappropriate answer. In fact, if the responses by the witnesses were predictable, it should have been equally apparent to defense counsel, who could have taken precautionary steps. We conclude the prosecutor did nothing to prompt the nonresponsive answers; he could not have foreseen them; and any problem was addressed by the district court's curative instructions. We hold there was no prosecutorial misconduct or error, and our analysis of this issue ends here.
[¶23] It is not clear whether Mr. Kuebel is arguing the rebuttal testimony of the Chief of Police was merely one of the instances of unprovoked non-responsive answers, or whether he is asserting it was error to present this rebuttal testimony. If Mr. Kuebel is arguing the latter, this argument also fails. The defense called a witness to testify that he had received one of the missing motorcycle parts from another person, and he had returned it to the Collinses. On cross-examination, this witness twice denied he had told the Chief of Police "someone" had purchased or paid $1,500 for the part. The prosecutor then called the Chief of Police who, over several objections, testified that the witness had told the Chief "somebody paid $1,500 for them." After defense counsel received the same answer on cross examination, he moved to strike the testimony as being hearsay. That motion was denied, and a bench conference transpired that is not part of the record. Without further explanation, the Court then instructed the jury it should not consider any testimony of what anybody had told the defense witness.
[¶24] The State had the right to impeach by presenting extrinsic evidence of prior inconsistent statements, provided specific procedural safeguards were followed. Wyoming Rule of Evidence 613(b). Mr. Kuebel does not explain why it was improper for the prosecutor to call a rebuttal witness, nor does he present any authority that doing so constituted misconduct. We conclude no misconduct was involved in the calling of the rebuttal witness; therefore, there was no error.
B. Was the Defendant, Mr. Kuebel, entitled to a judgment of acquittal because he only disassembled the 1988 Harley Davidson motorcycle?
[¶25] Mr. Kuebel was charged with felony property destruction pursuant to § 6-3-201. That statute provides as follows:
§ 6-3-201. Property destruction and defacement; grading; penalties; aggregated costs or values
(a) A person is guilty of property destruction and defacement if he knowingly defaces, injures or destroys property of another without the owner's consent.
(b) Property destruction and defacement is:
(i) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the cost of restoring injured property or the value of the property if destroyed is less than one thousand dollars ($1,000.00);
(ii) Repealed by Laws 1985, ch. 44, § 2.
(iii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the cost of restoring injured property or the value of the property if destroyed is one thousand dollars ($1,000.00) or more.
*187 (c) If a series of injuries results from a single continuing course of conduct, a single violation of this section may be charged and penalties imposed based upon the aggregate cost or value of the property injured or destroyed.
[¶26] At the close of the State's case, Mr. Kuebel moved for a directed verdict stating, "it was obviously, at worst, a misguided attempt by Mr. Kuebel to fix the bike on behalf of Mr. Collins and give it back to him at a later date." Mr. Kuebel now argues the district court should have granted his motion. We have held that the standard of review for a denial of a motion for judgment of acquittal is the same as that used when an appeal claims insufficient evidence to convict because both challenge the sufficiency of the evidence. Foltz v. State , 2017 WY 155, ¶ 10, 407 P.3d 398, 401 (Wyo. 2017). This Court does not re-weigh the evidence or re-examine the credibility of the witnesses. Id. Instead, we determine whether the evidence could reasonably support the findings of the fact finder. Id. (quoting Hill v. State , 2016 WY 27, ¶ 13, 371 P.3d 553, 558 (Wyo. 2016) ).
[¶27] We "accept as true the State's evidence and all reasonable inferences which can be drawn from it." Hyatt v. State, 2018 WY 84, ¶ 10, 422 P.3d 524, 527-28 (Wyo. 2018). We do not consider the defendant's conflicting evidence and we "do not substitute our judgment for that of the jury." Id . Instead, we "determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt." Id . "This standard applies whether the supporting evidence is direct or circumstantial." Id.
[¶28] Mr. Kuebel's argument was that he did not destroy the motorcycle, he "merely" disassembled it. There is more than enough evidence to support the jury's rejection of this argument. Mr. Collins testified the motorcycle was "in mint condition" when he left it in the locked shed. When the Collinses left the motorcycle in the shed, it was intact and not missing any parts. When it was later found, it was missing about one half of its parts. There was evidence it would cost between $10,000-$15,000 to repair the motorcycle.
[¶29] Mr. Kuebel does not dispute dismantling the motorcycle; the issue is whether disassembling constitutes defacing, injuring, or the destruction of property of another. His argument is apparently that since the motorcycle can be reassembled, it was not "destroyed." We have previously held that the statutory language is disjunctive, permitting a conviction for defacing, injuring, or destroying property. As applied to a tangible object, "injure" means to materially impair or destroy any part of the existing structure. Christian v. State , 883 P.2d 376, 380 (Wyo. 1994) (citing Black's Law Dictionary 785 (6th ed. 1990.)) Mr. Kuebel's argument ignores the fact that the Collinses' motorcycle was intact when they left it, and it was disassembled and lacking essential parts when it was located. The motorcycle was not functioning and was, in effect, destroyed until and unless someone with the necessary expertise took the time to reassemble it and perform whatever additional tasks were necessary to restore it to running order. Mr. Kuebel provides no authority to support his argument that an item of personal property is not destroyed or injured provided it can be repaired. We hold there was sufficient evidence to support the jury's finding that the motorcycle was injured or destroyed.
C. Was Mr. Kuebel entitled to a judgment of acquittal because the Collinses reserved no ownership rights to the Norton 1972 motorcycle in the contract with Mr. Kuebel?
[¶30] At the same time the Collinses left the two Harley Davidson motorcycles on the property, they also left two Norton motorcycles. A Norton motorcycle is a "classic" British motorcycle which is no longer manufactured. Mr. Kuebel and his business partner both testified the Norton motorcycles were sold as scrap, although their testimony differed slightly. Mr. Kuebel testified the Norton motorcycles were sold as part of a larger scrap pile, and his business partner testified the two Nortons were sold by themselves. There is no dispute about the motorcycles being sold, the only question is whether the Collinses owned the Norton motorcycles, or whether the motorcycles were *188 sold as part of the sale of the business. The jury found Mr. Kuebel guilty of misdemeanor theft of the 1972 Norton motorcycle.
[¶31] Again, we review the record to determine whether there is sufficient evidence to support the jury's finding. Hyatt v. State, 2018 WY 84, ¶ 10, 422 P.3d 524, 527-28 (Wyo. 2018). Mr. Kuebel asserts that when he purchased the business from the Collinses, the sales contract transferred certain personal property "including parts, inventory, supplies, furniture, etc."; Mr. Kuebel now contends this language included the Norton motorcycles, including the 1972 Norton motorcycle.
[¶32] There is substantial evidence to support the jury's rejection of this position and its determination that the Collinses retained ownership of the two Norton motorcycles. The testimony was that the Collinses retained certificates of title to them. These titles were received into evidence and presented to the jury. Mrs. Collins testified both Norton motorcycles were operational, except one needed a battery. She also testified that four motorcycles, including the Nortons, were left in the locked shed with the knowledge and consent of Mr. Kuebel, and the Collinses checked on the contents of the shed in 2015 and 2016. The attorney who prepared the sales contract indicated that if ownership of the motorcycles had been transferred, then the contract would have included their Vehicle Identification Numbers (VINs). Mr. Kuebel agreed the Collinses retained ownership of the two Harley Davidson motorcycles, and they were treated exactly as the Norton motorcycles were under the contract. Finally, the contract language refers to "parts, inventory, supplies," the motorcycles were not "parts" or "supplies," and therefore, they could only be considered as inventory. Mr. Kuebel conceded Mr. Collins did not sell motorcycles, so there would have been no inventory.
[¶33] Based on this evidence, the jury necessarily found that Mr. and Mrs. Collins retained ownership of the Norton motorcycles, and we will not disturb that finding.
D. Did the district court abuse its discretion by ordering restitution in an amount greater than one thousand dollars for the misdemeanor theft conviction?
[¶34] Following Mr. Kuebel's conviction by the jury, the district court held a restitution hearing. The State presented the testimony of Joey Taylor, who testified without objection, that the 1972 Norton motorcycle had a value of $2,500 to $3,500. Mr. Taylor indicated that this motorcycle was no longer manufactured and was a rare motorcycle. Mr. Kuebel also testified, and his opinion was, that the Norton motorcycle was not in working condition. Mr. Kuebel did not offer an opinion or present other evidence as to the value of the 1972 Norton motorcycle. The district court found Mr. Taylor's testimony was credible and ordered restitution in the amount of $2,500.
[¶35] Mr. Kuebel argues both that the district court abused its discretion in ordering restitution in an amount greater than one thousand dollars, which is the threshold for distinguishing between misdemeanor theft (value of property less than one thousand dollars) and felony theft (value of property one thousand dollars or more). He also claims that the evidence supporting the restitution was insufficient.
[¶36] A district court has no inherent power to award compensation to crime victims; it can only order that restitution authorized by statute. Hampton v. State, 2006 WY 103, ¶ 8, 141 P.3d 101, 104 (Wyo. 2006) (citations omitted). Wyo. Stat. Ann. § 7-9-102 (LexisNexis 2005 & Supp. 2006) states:
In addition to any other punishment prescribed by law the court shall, upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as determined under W.S. 7-9-103 and 7-9-114 unless the court specifically finds that the defendant has no ability to pay and that no reasonable probability exists that the defendant will have an ability to pay.
Wyo. Stat. Ann. § 7-9-103 (LexisNexis 2005 & Supp. 2006) further provides, in pertinent part:
*189 (a) As part of the sentencing process ... in any misdemeanor or felony case, the prosecuting attorney shall present to the court any claim for restitution submitted by any victim.
(b) In every case in which a claim for restitution is submitted, the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity....
[¶37] Victims may only receive pecuniary damages that are the "result of a defendant's criminal activities." Wyo. Stat. Ann. § 7-9-101(a)(v) (LexisNexis 2017). When it seeks restitution, the State has the burden of presenting credible evidence and proving the claim by a preponderance of the evidence. Renfro v. State , 785 P.2d 491, 493 (Wyo. 1990).
[¶38] There are different standards of review for factual challenges to the amount of restitution ordered and for challenges to the authority of the court to make a restitution award. O'Halloran v. State , 2014 WY 95, ¶ 11, 331 P.3d 121, 124 (Wyo. 2014). Mr. Kuebel's challenge to the district court's authority to order restitution in an amount greater than the misdemeanor threshold is reviewed under a de novo statutory interpretation standard, because a court has only that authority to act which is conferred by the subject statute. Id. On the other hand, the challenge to the lack of sufficient evidence for the restitution is reviewed to determine whether there was a "clear abuse of discretion." Id. "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." Id. Under this standard, the inquiry is whether the court's choice is reasonable. Id.
[¶39] The primary issue is whether the district court was limited to an award of restitution of less than one thousand dollars for the 1972 Norton motorcycle, since Mr. Kuebel was convicted only of misdemeanor theft of this motorcycle.
[¶40] A district court's authority to order restitution is governed by statute. Crapo v. State , 2007 WY 194, ¶ 11, 172 P.3d 393, 397 (Wyo. 2007). Section 7-9-102 requires that a court, "upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as determined under W.S. 7-9-103 and 7-9-114." Section 7-9-103(b) specifies that "the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity."
[¶41] Mr. Kuebel presents no authority to support his contention that the district court was restricted in awarding restitution to an amount under the misdemeanor amount. His argument is solely that the jury in the criminal trial found the State had not proven the Norton motorcycle had a value of over one thousand dollars. However, this ignores the fact that each element of the criminal charge must be proved beyond a reasonable doubt. Edwards v. State , 577 P.2d 1380, 1382 (Wyo. 1978) ("As with all criminal charges, each element must be proved beyond a reasonable doubt."); whereas restitution may be established by a lower standard, or by a preponderance of the evidence. Hampton, ¶ 11, 141 P.3d at 105 ("We have said that, when seeking restitution, the State bears the burden of presenting credible evidence and proving the claim by a preponderance of the evidence."). Id.
[¶42] Other courts have ruled that restitution may properly be ordered in an amount greater than that proved for conviction. In People v. Pagan, 165 P.3d 724, 729 (Colo. App. 2006), the appellate court had to determine whether collateral estoppel or double jeopardy precluded a restitution award greater than the amount required for conviction. The Colorado court determined that collateral estoppel did not apply because of the different burdens of proof. Id . at 730.
[¶43] The Pagan court also applied Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), to resolve the question of whether ordering higher restitution was double jeopardy, an issue not specifically raised by Mr. Kuebel. Dowling held that the introduction of evidence relating to a *190 crime that the defendant had previously been acquitted of committing did not violate the Double Jeopardy or Due Process Clauses of the Constitution when that evidence was used in a separate trial as evidence of bad acts under Fed. R. Evid. 404(b). The Dowling Court focused on the different burdens of proof involved--"beyond a reasonable doubt" as opposed to "preponderance of the evidence." Id .
[¶44] Other jurisdictions have agreed that restitution may exceed the amount proved for conviction. J.O.S. v. State , 668 So.2d 1082, 1085 (Fla. Dist. Ct. App. 1996), approved, 689 So. 2d 1061 (Fla. 1997) ("Assuming the principal purpose of restitution to be to restore to victims of crime the value of that which they have lost as a result of the crime, rather than to punish the wrongdoer, we can perceive no good reason why the amount should be limited arbitrarily by the maximum dollar value of the offense which a defendant is found to have committed."); People v. Gallagher , 55 Mich.App. 613, 223 N.W.2d 92, 96 (1974) ("The trial judge's requirement that defendant pay the value of the stolen car from which the cowl was found in his collision shop is not in violation of the probation statute nor is it a violation of any constitutional right of the defendant."); State v. Foltz , 14 Or.App. 582, 513 P.2d 1208, 1210 (1973) ("[F]act that defendant's conviction is for an attempt to commit theft would not preclude the court from conditioning probation upon restitution of the amount actually taken, even though a larger amount."); State v. Rogers , 30 Wash.App. 653, 638 P.2d 89, 92 (1981) ("[A] defendant could be ordered to pay restitution which exceeds the maximum value of property prescribed for conviction of the underlying offense.")
[¶45] We agree with these jurisdictions and hold that restitution is not limited to the amount that must be proved for conviction so long as the amount ordered is consistent with the applicable Wyoming statutes.
[¶46] Mr. Kuebel also asserts there was insufficient evidence to support the district judge's decision as to the amount of restitution.
[¶47] A district judge's factual findings are not entitled to the limited review afforded a jury verdict. BNSF Railway Co. v. Box Creek Mineral Limited Partnership , 2018 WY 67, ¶ 15, 420 P.3d 161, 165-66 (Wyo. 2018). Rather, these findings are presumptively correct. Because we give due regard for the district court's opportunity to assess the credibility of the witnesses, our review does not entail re-weighing disputed evidence; however, the appellate court may examine all of the properly admissible evidence in the record. Id .
[¶48] A judge's findings of fact will not be set aside unless they are clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. Id .
[¶49] During the hearing on restitution, the State called a witness who testified that he had nearly life-long experience working with motorcycles, jet skis and cars. This witness was familiar with the Norton motorcycles owned by the Collinses. He testified, without objection, that the 1972 Norton motorcycle had a value between $2,500 and $3,500. Mr. Kuebel testified that the motorcycle was in poor condition, but he presented no contrary evidence as to its value.
[¶50] We defer to the district judge's findings of fact unless, considering the entire record, we find them clearly erroneous. We conclude the district judge's decision was supported by evidence, and not clearly erroneous. We affirm the court's decision on restitution.
CONCLUSION
[¶51] Mr. Kuebel's convictions and sentences are affirmed.