# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 72

**APRIL TERM, A.D. 2025**

**July 3, 2025**

TIMOTHY B. DUKE,

Appellant
(Defendant),

v.

S-24-0316

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Robin S. Cooley, Judge*

*Representing Appellant:*

Office of the State Public Defender: Brandon Booth, Wyoming State Public Defender, Kirk A. Morgan, Chief Appellate Counsel.

*Representing Appellee:*

Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kristine D. Rude, Assistant Attorney General.

*Before BOOMGAARDEN, C.J., and FOX\*, GRAY, FENN, and JAROSH, JJ.*

\* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on this matter on May 28, 2025.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Chief Justice.**

[¶1]    Timothy Duke appeals the district court's restitution order, arguing there is insufficient evidence in the record to support the restitution amount. Finding the court reasonably based the award on victim testimony and information in the presentence investigation report, we affirm.

## *ISSUE*

[¶2]    We are asked to determine whether the district court abused its discretion when it determined the victims' restitution amount.

## *FACTS*

[¶3]    Joseph Walsh owned three homes in Cheyenne, which he used primarily for storage. In December 2023, he arrived at one property to pick up the mail. He found the front door ajar and the place "ransacked." Many household items were missing, and piles of paper and belongings had been strewn throughout the house. Later that evening, he went to the second property and found it in the same condition. He walked across the alley to the third house, and it too had been burglarized. When he called the Cheyenne police, he reported missing a large amount of cash, collectible coins, silver dollars, over 70 firearms, various trade tokens, and antique Wyoming police badges.

[¶4]    After an investigation, the police identified Timothy Duke, and several other codefendants, as the burglars. When police searched Mr. Duke's home, vehicle, and trailer, they found several items belonging to Mr. Walsh, including gold and silver coins, a bag of currency, and 29 guns. The police returned many of the stolen items to Mr. Walsh.

[¶5]    The State charged Mr. Duke with one count of theft over $1,000 and one count of aggravated burglary with a deadly weapon. Pursuant to a plea agreement, he pled guilty to the aggravated burglary charge and the State dismissed the theft charge. The parties recommended a sentence of not less than five years and not more than eight years imprisonment. Mr. Duke agreed to pay restitution, jointly and severally with his codefendants.

[¶6]    The State called Mr. Walsh as its only witness at the restitution hearing. He described the houses and the missing belongings. Mr. Walsh inherited one house from his late mother. There, Mr. Walsh stored his mother's coins, guns, collectibles, and a

1

substantial amount of cash. Another home contained the entire unsold inventory from a coin shop Mr. Walsh had owned but closed years ago. The third home, which Mr. Walsh inherited from his father and considered a secondary residence, contained cash, collectibles, and personal effects like clothes and food.

[¶7]    Mr. Walsh testified that he and his wife, Denise Parrish, were still sorting through the debris and assessing their loss. While they had not kept a full inventory of the items in the houses prior to the burglaries, Mr. Walsh claimed he had "a good memory" and had sifted through the mess to determine what was missing and what had been returned to him. Mr. Walsh cataloged the belongings he was claiming restitution for, and the State submitted the list as evidence (Exhibit 1) to support the restitution amount. Mr. Walsh estimated the number of missing items and assigned a cost value for each. The list included 100 guns ($500 each), 400 antique police badges ($400 each), 600 Wyoming tokens and medals ($50 each), a bag of silver dollars ($55,000 total), a bag of silver coins ($25,000 total), Christmas ornaments ($2,000 total), tools ($5,000 total), and $180,000 in cash. The entire restitution claim equaled $507,000. Mr. Walsh did not request restitution for the missing coin shop inventory. The State explained it was not seeking restitution for the missing collectible coins because the requested amount was only for "calculable" items that had not been returned.

[¶8]    The State also introduced two photographs of the belongings recovered by the police and returned to Mr. Walsh, and a large binder containing 880 pages of receipts. The binder was introduced for the narrow purpose of showing how much work Mr. Walsh had put into organizing the mess and assessing the loss. Mr. Duke cross-examined Mr. Walsh but did not call any witnesses or present additional evidence.

[¶9]    After the restitution hearing, the district court received an amended presentence investigation report which included a victim impact statement from Ms. Parrish. Ms. Parrish attached photographs of the debris and confirmed that only a small amount of their stolen property had been recovered.

[¶10]  At the sentencing hearing, the district court heard Mr. Walsh's and Ms. Parrish's victim impact statements. The court then ordered Mr. Duke to serve five to eight years imprisonment. It also ordered him to pay $507,000 restitution, jointly and severally with several co-defendants. The district court found the State "provide[d] the evidence and sufficient information to support" an order of restitution. The court noted that, while Mr. Walsh did not know exactly what was still missing, it "was clear" that cash, guns, tokens, badges, bags of silver, ornaments, and tools listed in the State's supporting exhibit had not been recovered. Given Mr. Walsh's "significant history" as a collector, the court found his estimated values were accurate, if not conservative. This appeal followed.

## *STANDARD OF REVIEW*

[¶11] The district court's factual findings on restitution are presumptively correct and will not be set aside unless they are clearly erroneous. *Kuebel v. State*, 2019 WY 75, ¶ 47, 446 P.3d 179, 190 (Wyo. 2019). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* ¶ 48, 446 P.3d 179 at 190. "Because we give due regard for the district court's opportunity to assess the credibility of the witnesses, our review does not entail re-weighing disputed evidence; however, [we] may examine all of the properly admissible evidence in the record." *Id.* ¶ 47, 446 P.3d 179 at 190; *see also Holliday v. State*, 2024 WY 139, ¶ 11, 561 P.3d 335, 338 (Wyo. 2024).

[¶12] "When a party challenges a restitution order for sufficiency of the evidence, we review the district court's decision for an abuse of discretion." *Holliday*, 2024 WY 139, ¶ 5, 561 P.3d at 337 (citing *O'Halloran v. State*, 2014 WY 95, ¶ 11, 331 P.3d 121, 124-25 (Wyo. 2014)).

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. A court abuses its discretion when it acts in a manner that exceeds the bounds of reason under the circumstances. The ultimate issue for this Court to determine on appeal is whether the trial court could reasonably conclude as it did.

*Munguia v. State*, 2025 WY 43, ¶ 13, 566 P.3d 925, 928 (Wyo. 2025) (quoting *Boline v. JKC Trucking*, 2025 WY 27, ¶ 28, 565 P.3d 669, 676 (Wyo. 2025)).

## *DISCUSSION*

[¶13] Without questioning Mr. Walsh's credibility, Mr. Duke challenges the district court's restitution award on two grounds. First, Mr. Duke claims Mr. Walsh never fully articulated what had been retrieved by police and what was still missing. Mr. Duke also claims Mr. Walsh ascribed only estimates or average cost amounts to the stolen belongings.

[¶14] In Wyoming, the sentencing court must "order a defendant to pay restitution to each victim . . . unless the court specifically finds that the defendant has no ability to pay and that no reasonable probability exists that the defendant will have an ability to pay."

Wyo. Stat. Ann. § 7-9-102 (2023). Victims may receive pecuniary damages arising from the defendant's criminal activity, not punitive damages or damages for pain and suffering. Wyo. Stat. Ann. § 7-9-101(a)(iii), (v) (2023). The State must prove the restitution amount by a preponderance of the evidence. *Holliday*, 2024 WY 139, ¶ 6, 561 P.3d at 337 (citing *Kuebel*, 2019 WY 75, ¶ 37, 446 P.3d at 189); Wyo. Stat. Ann. § 7-9-103(a) (2023). "The evidence is sufficient to support the sentencing court's restitution decision if it affords a reasonable basis for estimating a victim's loss." *Holliday*, 2024 WY 139, ¶ 6, 561 P.3d at 337 (citing *Smiley v. State*, 2018 WY 50, ¶¶ 13-14, 417 P.3d 174, 177 (Wyo. 2018)).

[¶15]  In *Holliday*, 2024 WY 139, ¶ 11, 561 P.3d at 337, we ruled the district court may rely on the victim's testimony about what was stolen from him. Additionally, the victim's estimated cost values and well-informed opinions provided sufficient credible evidence to sustain the district court's restitution order. *Brown v. State*, 2003 WY 72, ¶ 10, 70 P.3d 238, 241 (Wyo. 2003). In addition to the victim's in-court testimony, "[a] court may reasonably rely on the contents of a victim impact statement or a presentence investigation report as sufficient[.]" *Smiley*, 2018 WY 50, ¶ 13, 417 P.3d at 177 (citing *Frederick v. State*, 2007 WY 27, ¶ 14, 151 P.3d 1136, 1141 (Wyo. 2007); *Penner v. State*, 2003 WY 143, ¶ 7, 78 P.3d 1045, 1047 (Wyo. 2003); *Brock v. State*, 967 P.2d 26, 27-28 (Wyo. 1998)).

[¶16] We find Mr. Walsh's testimony, the State's supporting exhibits, and the presentence investigation report sufficient to support the district court's restitution award. Mr. Walsh's testimony about what was stolen from him and what had been returned, as well as his estimated cost values of the stolen items provided a reasonable basis for the district court to award restitution. While Mr. Walsh could not account for every unretrieved item, he had documented the property returned to him and reduced his restitution request accordingly. The presentence investigation report, which included a statement by Ms. Parrish, and Ms. Parrish's and Mr. Walsh's victim impact statements at sentencing corroborated Mr. Walsh's testimony at the restitution hearing.

[¶17] Mr. Walsh had personal knowledge of his own belongings, and he testified with particularity. Although Mr. Walsh did not provide a perfected list of missing items to the district court and had not yet finished sorting through three "ransacked" houses at the time of the hearing, he accounted for the returned items and reduced his restitution claim appropriately. Mr. Walsh identified a "tub" of good Christmas ornaments as stolen. At the hearing, he explained his wife had collected the ornaments over many years of international travel. She typically picked up one ornament from each country. Mr. Duke and his cohorts took the storage bin labeled "good Christmas ornaments," but left another bin labeled simply "Christmas ornaments." Mr. Walsh also detailed the type of tools taken from the garage: a compressor, a lawn mower, a snow blower, and an assortment of hand and power tools. He noticed the defendants left grease guns and rope, as they were "methodically stealing everything they could out of the garage and sorting as they went

4

through it." Finally, Mr. Walsh explained that his houses contained a significant amount of cash because his parents were children of the depression, and no one in the family trusted banks.

[¶18] Mr. Walsh testified that 150 firearms had been stolen, and the police recovered "50 at most." He therefore requested restitution for 100 guns. Mr. Walsh claimed the police had recovered many of his antique law enforcement badges, but approximately 400 badges were still missing. Mr. Walsh also claimed that while 600 of his Wyoming tokens had been returned, his collection numbered between 1,200-1,500. Consequently, he requested restitution for 600 tokens. The district court acknowledged that Mr. Walsh could not know exactly what remained missing; however, it "was clear" that the cash, guns, tokens, badges, bags of silver coins, ornaments, and tools listed in the State's exhibit had not been recovered.

[¶19] Mr. Walsh also had professional knowledge of the value of his missing belongings. Mr. Walsh's interest in coin collecting began when he was a child. Even though he sold his coin shop years ago, he still traded collectibles in his retirement. Mr. Walsh was a member in numismatic associations, a certified personal property appraiser, and a member of the Montana-Wyoming Antique Appraisers Association. With this background, Mr. Walsh provided informed cost estimates for the missing items. For instance, he assigned an average $500 value for each missing gun. Some guns would have been more valuable, as they were collectibles, but others might have been worth less. He valued the bag of silver dollar coins based on the number of coins in the bag multiplied by the value of an individual coin, and valued a similar sized bag of mixed coins based on his knowledge of silver value. For the antique police badges, Mr. Walsh thought one badge may likely sell for $400 on the open market. He reasoned new badges are worth $100-$125, so the price of an older, collectible badge would be considerably more. Mr. Walsh assigned a $50 value for each missing token, and while he acknowledged the amount sounds high for some of the more common tokens, he was also accounting for the rare military tokens, silver medals, saloon tokens, and two full display boards that were missing.

[¶20] Finally, the presentence investigation report, which included a statement from Ms. Parrish, corroborated Mr. Walsh's entire testimony. She provided photographs of the debris left behind and confirmed that only a small amount of their stolen items had been recovered. She emphasized the requested amount was minimal, considering the extent of the burglary.

[¶21] Mr. Walsh gave credible and uncontradicted testimony to support his restitution request. The district court reasonably found that the amounts claimed in the exhibit were "accurate" based on Mr. Walsh's personal knowledge of his belongings and "significant history" as a collector and a coin shop owner. We acknowledge the district court is better positioned to assess witness credibility, and "while we review the entire record, we do not

reweigh the evidence." *Holliday*, 2024 WY 139, ¶ 11, 561 P.3d at 338 (citing *Kuebel*, 2019 WY 75, ¶ 47, 446 P.3d at 190) We hold there was sufficient evidence to sustain the district court's findings with respect to restitution, and the district court did not abuse its discretion when it ordered Mr. Duke to pay $507,000 in restitution. We affirm.