# THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 27

OCTOBER TERM, A.D. 2025

February 26, 2026

KYLEA RAE BAIER,

**Appellant**
**(Defendant),**

**v.**

S-25-0165

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Peter H. Froelicher, Judge*

*Representing Appellant:*
   *Office of Public Defender: Brandon T. Booth, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Senior Assistant Appellate Counsel.*

*Representing Appellee:*
   *Keith G. Kautz, Attorney General: Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Leanne J. Johnston, Assistant Attorney General.*

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    Kylea Baier appeals from the judgment and sentence entered following her plea of no contest to conspiracy to commit theft.  She contests only the restitution award of $92,722.79, arguing certain amounts charged to the victim's credit cards should not have been included in the award because the victim received a benefit from those charges.  We affirm.

## ISSUE

[¶2]    Ms. Baier presents one issue on appeal, which we restate as follows:

> Did the district court abuse its discretion when it declined to deduct the cost of the concrete pad poured on the victim's property from the restitution award?

## FACTS

[¶3]    In 2022, Kylea R. Baier and Michael L. Smith approached the victim regarding the sale of her late husband's truck.  Ms. Baier and Mr. Smith introduced themselves to the victim as Jaspar and Malachi McKeahan and falsely represented that Ms. Baier was Mr. Smith's daughter.  After meeting the victim and inspecting her truck, Mr. Smith helped the victim set up and organize an estate sale.  After helping with the estate sale, Mr. Smith asked the victim to meet him at a coffee shop, stating he had a proposal for her, and instructed her to bring a list of all her credit cards and what she could borrow on each card.  During that meeting, Mr. Smith proposed to the victim that she fund his business venture.  He represented that if the victim funded his business, he would split the profits with her.

[¶4]    Over time, the victim provided Mr. Smith with cash, credit cards, check advances and loans, yet she never received any compensation or payments from Mr. Smith.  During the course of their relationship with the victim, Ms. Baier and Mr. Smith spent the victim's money, charged items to her credit cards, and took other property without her permission.  At one point, Mr. Smith persuaded the victim to execute a warranty deed conveying her home to Ms. Baier and a company Ms. Baier owned called PCW.  Mr. Smith represented to the victim that the execution of the warranty deed was necessary for him to assist her with maintenance matters related to her home and ongoing financial difficulties.

[¶5]    After discovering credit cards had been removed from her office without permission and unauthorized charges were made on her credit cards, the victim reported Ms. Baier and Mr. Smith to the Laramie County Sheriff's Office.  Detective Dustin Parker with the Laramie County Sheriff's Office investigated the victim's allegations of fraudulent credit card activity.  As part of his investigation, Detective Parker obtained warranty deeds, bank statements, and credit card statements.  He also contacted the businesses where the credit

1

cards had been used and obtained security footage of the transactions and related account information. Detective Parker discovered Mr. Smith and Ms. Baier made unauthorized purchases using the victim's credit cards under accounts associated with Mr. Smith's alias, Malachi McKeahan. Upon completion of his investigation, Detective Parker determined that Mr. Smith was not engaged in any legitimate business. He further determined there were fraudulent credit card charges made on the victim's credit cards, including cash advances made to Ms. Baier's company. He also learned several cash advances were obtained on the victim's credit cards through checks taken from the victim's residence without permission. It was estimated Ms. Baier and Mr. Smith defrauded the victim of approximately $209,346.16 through fraudulent credit card charges, unauthorized cash advances, and the theft of cash and tangible items.

[¶6]    The State charged Ms. Baier with one count of felony theft and one count of conspiracy to commit theft. Ultimately, Ms. Baier entered into a plea agreement with the State. Ms. Baier agreed to plead no contest to the conspiracy charge. In exchange, the State agreed to dismiss the felony theft charge and recommend a deferred prosecution on the conspiracy charge pursuant to Wyoming Statute § 7-13-301 (2023). Ms. Baier further agreed to testify at any trial against Mr. Smith and to pay reasonable restitution, the amount of which would be determined at a restitution hearing.

[¶7]    On March 13, 2025, the district court held a restitution hearing. The State called Detective Parker and the victim to testify about Ms. Baier's and Mr. Smith's unauthorized credit card transactions, cash advances, and the value of the cash and other items stolen from the victim. Ms. Baier called Mr. Smith to testify about his business arrangement with the victim and any credit card charges and cash advances made on the victim's credit cards. Mr. Smith testified there were occasions when the victim gave him express permission to use her credit cards, including using her credit card to pay for the installation of a concrete floor in her shop. At the conclusion of the hearing, the district court ordered the parties to submit written closing arguments specifying the restitution amount they each believed was appropriate based upon the evidence presented at the hearing.

[¶8]    In its closing statement, the State requested the district court order restitution for the following amounts:

| Category | Total Amount Requested |
|---|---|
| Warranty Deed to victim's home | requested deed to be signed back over to the victim |
| Credit Card Fraud | $92,722.79 |
| Cash | $47,000.00 |
| Value of other items | No restitution requested regarding additional stolen items |
| **Total** | **$139,722.79** |

2

The State requested any restitution obligation be joint and several with Mr. Smith. The State acknowledged Mr. Smith was clearly more culpable than Ms. Baier for the theft, but contended Mr. Smith was able to get into a position of trust with the victim to commit the thefts because of the role Ms. Baier played in pretending to be Mr. Smith's daughter.

[¶9]    In her closing statement, Ms. Baier stated she was not contesting restitution in the amount of $10,125.79 for certain credit card charges. She argued a portion of the remaining credit card charges should not be awarded as restitution because the charges had been approved by the victim "for concrete that was poured in her [shop]," and the victim benefited from that purchase. Ms. Baier further claimed some of the charges were for the purchase of tires for the victim's truck, and approximately $3,000.00 was already refunded by the victim's credit card company. With regard to the remaining charges, Ms. Baier contended the State did not establish the charges and cash advances were made by Ms. Baier and without the victim's permission, and therefore the district court should deny restitution for any remainder of the amount the State requested. She further argued the State presented no evidence Ms. Baier took cash from the victim. Ms. Baier did not address whether any restitution ordered should be joint and several with Mr. Smith.

[¶10]  The district court held a sentencing hearing on May 15, 2025, and found the State had proven by a preponderance of the evidence Ms. Baier and Mr. Smith made fraudulent credit card charges and cash advances on the victim's credit cards in the amount of $92,722.79. The district court declined to award restitution for the allegedly stolen cash, concluding the State had not presented sufficient evidence supporting any theft of cash. The district court rejected Ms. Baier's arguments regarding the concrete work, the tires on the truck, and the alleged $3,000.00 refund. The district court explained it could not deduct any amount for the concrete because the record did not clearly show the charges on the credit cards were spent for that purpose. Similarly, the district court acknowledged Mr. Smith may have purchased new tires for the victim's truck, but Mr. Smith continued to drive the truck and the condition of the tires was unknown. The district court also found there was no evidence supporting the credit card company had refunded $3,000.00 to the victim. Overall, the district court concluded, based on the testimony of both Detective Parker and the victim, all the charges on the credit cards were made without the victim's permission.

[¶11]  The district court sentenced Ms. Baier to a deferred sentence for conspiracy to commit theft and ordered Ms. Baier to be placed on probation for a period of three years. The district court ordered as a condition of Ms. Baier's probation that she "take whatever steps are required to transfer the warranty deed and ownership of the property" back to the victim within 30 days. The district court further ordered Ms. Baier to make payments towards restitution in the total amount of $92,722.79 to the victim, joint and several with Mr. Smith. Ms. Baier timely appealed the district court's restitution award.

## STANDARD OF REVIEW

[¶12]   "Challenges to the factual basis for a restitution order are reviewed for procedural error or clear abuse of discretion." *Freeman v. State*, 2019 WY 86, ¶ 9, 448 P.3d 194, 196 (Wyo. 2019).  "When a party challenges a restitution order for sufficiency of the evidence, we review the district court's decision for an abuse of discretion." *Duke v. State*, 2025 WY 72, ¶ 12, 571 P.3d 340, 343 (Wyo. 2025) (quoting *Holliday v. State*, 2024 WY 139, ¶ 5, 561 P.3d 335, 337 (Wyo. 2024)).

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. A court abuses its discretion when it acts in a manner that exceeds the bounds of reason under the circumstances.

*Id.* (quoting *Munguia v. State*, 2025 WY 43, ¶ 13, 566 P.3d 925, 928 (Wyo. 2025)).

[¶13]   "The district court's factual findings on restitution are presumptively correct and will not be set aside unless they are clearly erroneous." *Id.* at ¶ 11, 571 P.3d at 343 (citing *Kuebel v. State*, 2019 WY 75, ¶ 47, 446 P.3d 179, 190 (Wyo. 2019)).  "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Kuebel*, ¶ 48, 446 P.3d at 190)."  "Because we give due regard for the district court's opportunity to assess the credibility of the witnesses, our review does not entail re-weighing disputed evidence; however, we may examine all of the properly admissible evidence in the record." *Id.* (quoting *Kuebel*, ¶ 47, 446 P.3d at 190).  "We view the evidence in the light most favorable to the State, affording it the benefit of every reasonable inference that can be fairly drawn and disregarding any conflicting evidence or interpretations presented by the defendant." *Voelker v. State*, 2018 WY 72, ¶ 16, 420 P.3d 1098, 1100 (Wyo. 2018) (citing *Merkison v. State*, 996 P.2d 1138, 1142 (Wyo. 2000)).  If the district court's decision affords a reasonable basis for estimating a victim's loss, we view the evidence as sufficient to support the district court's decision. *Id.* (quoting *Smiley v. State*, 2018 WY 50, ¶ 13, 417 P.3d 174, 177 (Wyo. 2018)).  "[T]he ultimate issue is whether or not the court could reasonably conclude as it did." *Holliday*, 2024 WY 139, ¶ 5, 561 P.3d at 337 (quoting *Hilterbrand v. State*, 930 P.2d 1248, 1250 (Wyo. 1997)).

## DISCUSSION

[¶14]   "A district court's authority to order restitution is governed by statute." *Kuebel*, 2019 WY 75, ¶ 40, 446 P.3d at 189.  Wyoming Statute § 7-9-102 (2023) requires the district court to "order a defendant to pay restitution to each victim as determined under W.S. 7-9-103 and 7-9-114[,]" "upon conviction for any misdemeanor or felony[.]"  Wyoming Statute

§ 7-9-103(b) (2023) specifies "the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity[.]"

[¶15]  The district court ordered Ms. Baier to pay restitution in the amount of $92,722.79, joint and several with her co-conspirator, Mr. Smith, for losses arising from their conspiracy to make unauthorized purchases and cash advances on the victim's credit cards. The amount the district court awarded is equal to the total amount the State requested for all credit card charges and cash advances made on the victim's credit cards by Ms. Baier and Mr. Smith.  Ms. Baier argues the district court erred when it ordered restitution for credit card charges relating to concrete improvements on the victim's property because the victim received and retained a benefit from those charges.  She claims the victim's property was improved by the pouring of a concrete pad, the victim remained in possession and control of the improved property, and therefore the district court erred in awarding restitution for any credit card charges or cash advances related to the concrete pad.

[¶16]  Regarding any credit card charges for the concrete pad, the district court found:

> I understand [counsel's] arguments in regards to potentially the concrete work that was done . . . but I reject those arguments. There was no evidence.
>
> . . . .
>
> I can't . . . reasonably deduct an amount of concrete.  It's not clear in the record that the money spent for the concrete off the credit card was spent for that particular purpose, nor the value of it. So I can't reasonably deduct that.
>
> . . . .
>
> . . . [T]he evidence as I have [it] is from the credit cards, the credit card reports, and the indications from both the detective and [victim] through the detective that those were all charges done by Mr. Smith without her permission.

[¶17]  Viewing the evidence in the light most favorable to the State and making all reasonable inferences that can be reasonably drawn from it, we conclude the district court did not clearly err or abuse its discretion when it found it could not reasonably deduct any charges made on the victim's credit cards for the pouring of a concrete floor in the victim's shop.  The district court may award restitution in reliance on the victim's testimony about what credit card charges were fraudulently made. *See Duke*, 2025 WY 72, ¶ 15, 571 P.3d at 343 (citing *Holliday*, 2024 WY 139, ¶ 11, 561 P.3d at 338).  Additionally, "[w]hen the

defendant does not present contradictory evidence to a victim's request for restitution, the court does not err in relying on a victim's estimates of loss." 24 C.J.S. *Criminal Procedure and Rights of Accused* § 2499 (Dec. 2025 Update) (citing *State v. McClelland*, 357 P.3d 906, 909 (Mont. 2015)).

[¶18]  Here, Mr. Smith testified he used several of the victim's credit cards to charge for seven truckloads of concrete from Knife River.  He further testified he deposited checks the victim had written to him in Ms. Baier's bank account and "pull[ed] the money out to pay the concrete and construction guys . . . working on [the victim's] shop."  Mr. Smith testified the total amount for the concrete for the victim's shop was more than $23,000.00.  The victim's credit card statements indicate there was only one charge on one of the victim's several credit cards made to Knife River in the amount of $1,500.  Detective Parker testified this charge was made without the victim's authorization.  There is nothing in the record indicating this charge to Knife River was made for the purpose of pouring concrete in the victim's shop.  Additionally, there is nothing in the record supporting any of the credit card charges related to the pouring of concrete in the victim's shop.  Ms. Baier has not presented any invoices or receipts showing the total amount it cost to pour the concrete in the victim's shop or that such cost was paid for via specific charges on the victim's credit cards.

[¶19]  Because Ms. Baier has not presented contradictory evidence to the victim's request for restitution, the district court could reasonably conclude as it did, and it did not err in relying on the victim's estimate of her loss based on the charges Ms. Baier and Mr. Smith made to her credit cards. *See* 24 C.J.S. *Criminal Procedure and Rights of Accused* § 2499 (citing *McClelland*, 357 P.3d at 909).  The district court acted within its discretion in declining to deduct credit card charges from the restitution award for any amounts purportedly related to the pouring of the concrete floor in the victim's shop.

## CONCLUSION

[¶20]  The district court did not abuse its discretion in declining to deduct any amount for the pouring of a concrete floor on the victim's property.  The record contains no evidence showing the credit card charges included in the restitution amount were made for the particular purpose of pouring the concrete floor in the victim's shop.  We affirm the district court's order awarding restitution in the amount of $92,722.79.