# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 95

APRIL TERM, A.D. 2014

*July 30, 2014*

RYAN O'HALLORAN,

Appellant
(Defendant),

v.                                                          S-13-0238

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Big Horn County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*

    Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellant Counsel; and David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*

    Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; and Jennifer Zissou, Assistant Attorney General. Argument by Ms. Zissou.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

\*Chief Justice at time of oral argument.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]   Ryan O'Halloran pled guilty to misdemeanor interference with a peace officer. Pursuant to his plea agreement, Mr. O'Halloran agreed to pay restitution in an amount to be determined in future proceedings against his co-defendant. Nearly two years after Mr. O'Halloran's plea and sentencing, the district court issued a ruling requiring Mr. O'Halloran to pay restitution in the amount of $2,600.15. Mr. O'Halloran appeals, challenging the sufficiency of the evidence supporting the amount of the restitution order and contending that the delay in entering the restitution order violated his due process rights. We find that the restitution order was not supported by sufficient evidence and reverse.

## ISSUES

[¶2]   Mr. O'Halloran states the issues on appeal as follows:

> I.    Did the trial court commit error by awarding restitution for crimes to which Mr. O'Halloran did not plead guilty and for which there was no plea agreement to pay?
>
> II.   Did the 717 days between the date Mr. O'Halloran pled guilty and the entry of his judgment and sentence constitute a violation of due process in that Mr. O'Halloran was denied his right to speedy sentencing?

## FACTS

[¶3]   On September 5, 2006, Mr. O'Halloran's sister, Megan O'Halloran, applied to the Department of Family Services (DFS) for child care benefits. The child care benefits were benefits intended to provide assistance to Ms. O'Halloran in paying for child care while she participated in an approved activity, such as work or school. As a condition to receiving the child care benefits, Ms. O'Halloran was required to use an authorized daycare provider—that is, a provider approved by DFS. In September 2006, an application was submitted to DFS for Mr. O'Halloran to serve as an authorized daycare provider for Ms. O'Halloran's children. Thereafter, several bills for child care services were submitted to DFS, identifying Ms. O'Halloran as the benefit recipient and Mr. O'Halloran as the provider and bearing the purported signatures of both individuals.

[¶4]   Between October 2006 and November 2008, DFS issued eighteen checks payable to Mr. O'Halloran, totaling $5,200.30. Through an investigation, DFS discovered that for some of the periods for which benefits were paid, Ms. O'Halloran was not participating in an approved activity or Mr. O'Halloran was working at other employment rather than providing child care services. The investigation also revealed that Debora McEwan, the

1

mother of Mr. O'Halloran and Ms. O'Halloran, signed seventeen of the eighteen checks.[1] On June 30, 2009, during the course of a law enforcement investigation into these events, Mr. O'Halloran told the officer that the signatures on certain documents were his signatures, knowing that those statements to the officer were untrue.

[¶5]   On January 11, 2010, the State filed a felony information charging Mr. O'Halloran with making a false statement to obtain welfare benefits. Ms. O'Halloran was similarly charged, and on September 30, 2010, the district court entered an order joining their cases for trial. Pursuant to a plea agreement, Mr. O'Halloran pled guilty to an amended charge of misdemeanor interference with a peace officer. The prosecutor described the terms of the plea agreement, which included Mr. O'Halloran's continued cooperation in the State's investigation and the following:

> That Mr. O'Halloran will be sentenced to the full maximum sentence of that [charge], which we believe it's a high misdemeanor, so it will be one year in the county jail, credit for whatever time he has served. All of that will be suspended, and that he will be placed on unsupervised probation.
>
> * * * *
>
> Mr. O'Halloran will pay restitution for the amount that he has actually received off of this, which we believe was due to his working and baby-sitting at different times, but we don't know exactly how much that would be. We believe it's probably less than $500. But we would ask the Court to allow some time until the rest of this – and the other codefendants have gone through their pleas or their trials or whatever so we can find out how much he did receive, and that he pay the restitution with regard to that.

[¶6]   The district court accepted the plea agreement and in accordance with the agreement, sentenced Mr. O'Halloran to one year in county jail, suspended in favor of one year of unsupervised probation. During that ruling, the following exchange occurred:

> THE COURT:        * * *
> And the Court will accept that agreement, which is a sentence of one year in the county jail, with credit for time served. That is to be suspended, and you are to serve a term of one year of unsupervised probation.

---

[1]  Debora McEwan was also charged in relation to these events and pled guilty to two counts of felony obtaining public welfare benefits by misrepresentation. *See McEwan v. State*, 2013 WY 158, 314 P.3d 1160 (Wyo. 2013).

I assume that begins today.

[Defense Counsel]: Yes, sir, Your Honor.

THE COURT: Essentially, it's to violate no state, local or federal law.

The issue of restitution will be reset for a separate hearing as these other cases resolve and we have more information to determine the dollar amount. However, it's the Court's understanding that that would be less than $500, but we'll determine that at a later date.

[¶7]    Prior to Mr. O'Halloran's change of plea hearing, Ms. O'Halloran had requested a continuance of her trial date. Following an additional continuance on the district court's own motion, Ms. O'Halloran's trial date was continued to June 4, 2012. On May 29, 2012, Ms. O'Halloran requested a change of plea and sentencing hearing, and the court set that hearing for August 2, 2012. Ms. O'Halloran and the State thereafter jointly moved to continue that hearing, and the court continued the hearing to October 25, 2012. Ms. O'Halloran requested another continuance, and the hearing was continued to November 29, 2012. On November 20, 2012, the State requested a hearing to determine the amount of restitution owed by Mr. O'Halloran, and the court set that hearing to take place in conjunction with Ms. O'Halloran's change of plea and sentencing hearing. Mr. O'Halloran requested a continuance of that hearing, citing his counsel's scheduling conflicts, and the hearing was continued to December 27, 2012. On its own motion, the court reset the hearing to January 11, 2013. Mr. O'Halloran and Ms. O'Halloran jointly requested one final continuance, and the court held a restitution hearing on February 14, 2013.

[¶8]    During the February 14, 2013 restitution hearing, Mr. O'Halloran argued that any restitution order would violate his due process rights because of the long delay between his plea and sentencing and the restitution hearing. Mr. O'Halloran also argued that if the district court did order him to pay restitution, the amount of restitution must be limited to the amount of money he actually received from the transaction. The State presented evidence that the checks issued in the transaction totaled $5,200.30, and it argued that Mr. O'Halloran and Ms. O'Halloran should be jointly and severally liable for the entire amount. At the conclusion of the hearing, the court took the matter under advisement.

[¶9]    On April 24, 2013, the district court issued a decision letter announcing its ruling on the restitution issue. The court ordered Mr. O'Halloran and Ms. O'Halloran to each pay one-half of the restitution claimed by the State. In so ruling, the court stated, in part:

> Who benefited from Ms. O'Halloran's enterprise is not clear, however, the amount claimed does not appear to be in dispute. It is also clear that amount ($5,300.30) represents actual damages, not future or speculative damages.

3

* * * *

Mr. O'Halloran did not appear, however his attorney argues that he should be responsible, if at all, for a minimum amount related to a check he endorsed. He also argues that, because of the delay, Mr. O'Halloran has been denied due process. The Court is not persuaded by either of those arguments. He was involved in the enterprise and should be required to pay restitution. No evidence of inability to pay was introduced.

[¶10] On May 20, 2013, the district court entered a Judgment, Sentence and Probation Order for Defendant Ryan O'Halloran, and on August 6, 2013, the court entered its Order of Restitution. On September 5, 2013, Mr. O'Halloran filed a Notice of Appeal.

## STANDARD OF REVIEW

[¶11] This Court reviews restitution orders using the following standard of review:

> The standard of review of restitution orders is confined to a search for procedural error or a clear abuse of discretion. *Penner v. State*, 2003 WY 143, ¶ 7, 78 P.3d 1045, 1047 (Wyo. 2003). The court-ordered restitution should be supported by sufficient evidence to afford a reasonable basis for estimating the loss. *Id*. The restitution can be challenged only for abuse of discretion by the court. *Id*. "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Monjaras v. State*, 2006 WY 71, ¶ 8, 136 P.3d 162, 164 (Wyo. 2006). Under this standard, the inquiry is whether the court's choice is reasonable. A victim impact statement is credible evidence to support an order of restitution. *Penner*, ¶ 7, 78 P.3d at 1047 (citation omitted).

> There is a distinction between the standard of review of factual challenges to the amount of restitution ordered and challenges to the authority of the court to make a restitution award. Challenges to the factual basis of an award of restitution can be waived if the defendant enters into a plea agreement and then fails to object at sentencing. *Penner*, ¶ 7, 78 P.3d at 1047. If the defendant does not object to the amount of restitution ordered by the district court, the

4

reviewing court must review for plain error. *Id*. at 1048. If the defendant challenges the authority of the district court to order restitution, then review is under a *de novo* statutory interpretation standard, because a court has only that authority to act which is conferred by the subject statute. *Id*.

*Frederick v. State*, 2007 WY, ¶¶ 14-15, 151 P.3d 1136, 1141 (Wyo. 2007).

[¶12] The issues in this appeal also require that we consider the terms of the State's plea agreement with Mr. O'Halloran and whether the restitution urged by the State and ordered by the district court is in keeping with that agreement. Regarding review of compliance with a plea agreement, we have said:

> When a plea of guilty is entered as a result of a plea agreement, any promises made by the State must be fulfilled and whether a prosecutor has violated an alleged agreement is a question that is reviewed *de novo*.

*Frederick*, ¶ 13, 151 P.3d at 1141 (citing *Spencer v. State*, 2005 WY 105, ¶ 12, 118 P.3d 978, 982–983 (Wyo. 2005)).

## DISCUSSION

[¶13] Mr. O'Halloran argues that the district court's restitution order exceeded its authority because the order required Mr. O'Halloran to pay restitution for a crime to which he did not plead guilty and for which he did not agree to pay restitution. The State responds that while Mr. O'Halloran did not plead guilty or admit to welfare fraud, he did agree to pay restitution for that crime, and the court was therefore authorized to order the restitution payment. The State further contends that the record supported the amount of restitution ordered by the court because restitution is measured by the damage to the victim, not by the benefit to the defendant. We agree that the district court had authority to order Mr. O'Halloran to pay restitution for the welfare fraud, but we conclude that the amount ordered by the court is unsupported by the evidence.[2]

---

[2] We have held that a court generally must order restitution at the sentencing hearing and include the restitution in the judgment and sentence. *Smith v. State*, 2012 WY 130, ¶ 5, 286 P.3d 429, 431, n.2 (Wyo. 2012). That procedural right is, however, personal to a defendant and may be waived. *Id*. (citing *Kahlsdorf v. State*, 823 P.2d 1184, 1193 (Wyo. 1991)). The record reflects that Mr. O'Halloran agreed to have restitution determined in a separate proceeding, and Mr. O'Halloran has not on appeal contended that his waiver of the right to have restitution determined at the sentencing hearing was not a knowing and intelligent waiver. We therefore find no inherent error in the district court's separation of the sentencing and restitution orders.

[¶14] The legal authority of a sentencing court to impose restitution is derived solely from statute. *Hite v. State*, 2007 WY 199, ¶ 11, 172 P.3d 737, 740 (Wyo. 2007); *Crapo v. State*, 2007 WY 194, ¶ 11, 172 P.3d 393, 397 (Wyo. 2007). A court may order restitution only for losses "resulting from the defendant's criminal activity." *Crapo*, ¶ 12, 172 P.3d at 397 (quoting Wyo. Stat. Ann. § 7–9–103(b)). This means that to require restitution for a crime, a court must find that the defendant pled guilty to the crime, was convicted of the crime, admitted to the crime, or agreed to pay restitution for the crime. *Graham v. State*, 2011 WY 130, ¶ 14, 261 P.3d 239, 242 (Wyo. 2011); *Crapo*, ¶¶ 12, 14, 172 P.3d at 397.

[¶15] In this case, Mr. O'Halloran did not admit to the welfare fraud with which he was charged, but he agreed, pursuant to his plea agreement, to pay restitution related to that charge. That agreement to pay, however, had parameters. The record contains no written plea agreement, but during the change of plea and sentencing hearing, the court asked the prosecutor to recite the State's agreement with Mr. O'Halloran. The prosecutor described the terms of Mr. O'Halloran's agreement to pay restitution as follows (with our emphasis added):

> ***Mr. O'Halloran will pay restitution for the amount that he has actually received off of this***, which we believe was due to his working and baby-sitting at different times, but we don't know exactly how much that would be. We believe it's probably less than $500. But we would ask the Court to allow some time until the rest of this – and the other codefendants have gone through their pleas or their trials or whatever ***so we can find out how much he did receive, and that he pay the restitution with regard to that***.

[¶16] A plea agreement is a contract between the State and the defendant, and a prosecutor "must explicitly stand by" the terms of that contract. *Frederick*, ¶ 13, 151 P.3d at 1141 (quoting *Ford v. State*, 2003 WY 65, ¶ 18, 69 P.3d 407, 412 (Wyo. 2003)); *see also Herrera v. State*, 2003 WY 25, ¶ 18, 64 P.3d 724, 729 (Wyo. 2003) ("[A] prosecutor must explicitly stand by those terms agreed upon and may not play 'fast and loose' with the established terms reached between the parties in a plea agreement."). Thus, while it is correct, as the State points out, that pursuant to Wyo. Stat. Ann. § 7-9-103, restitution is generally measured by the damage to the victim, the State cannot ignore the terms of its plea agreement with Mr. O'Halloran. The plea agreement limited the amount of Mr. O'Halloran's restitution to amounts he actually received in relation to the welfare fraud scheme, and the court's restitution order therefore had to be based on a showing of that amount.

[¶17] It is the State's responsibility to prove a victim's legal entitlement to restitution. *Hite*, ¶ 15, 172 P.3d at 741; *Hampton v. State*, 2006 WY 103, ¶ 11, 141 P.3d 101, 105

(Wyo. 2006). With respect to Mr. O'Halloran's restitution requirement, this required the State to present evidence showing the amount of money Mr. O'Halloran received from the welfare fraud scheme. The State did not meet its burden.

[¶18] During the restitution hearing, the DFS investigator testified as follows on direct examination by the prosecutor:

> Q. Okay. And what did you learn from the interview from Mr. O'Halloran?
> A. That Mr. O'Halloran didn't receive the money from the checks.
> Q. Okay. Did he say where it went?
> A. He didn't know.

[¶19] On cross-examination by Mr. O'Halloran's counsel, the DFS investigator testified that she did not know if Mr. O'Halloran benefitted from the monies obtained through the fraudulent scheme. She further testified:

> Q. Okay. During the course of that interview or through your investigation, do you know how much money Mr. O'Halloran actually received of this 5200 that the State is now seeking?
> A. Very little, if any.
> Q. Very little, if any. Could you put an estimated dollar figure amount?
> A. I believe that Ryan O'Halloran said that he had received a little bit of money from the first check, but I don't remember – I don't think he could recall the specific dollar amount.
> Q. And do you recall – I think [Ms. O'Halloran's counsel] asked this, but I'm just following up. Do you recall how much money that first check, that warrant was for?
> * * * *
> A. $93.50.
> Q. And is it your recollection that Mr. O'Halloran, Ryan, only received a partial amount of that?
> A. I believe that's what he told us, yes.
> Q. And do you have any reason to believe that he received any more moneys of this 5200 than that partial check?
> A. No, I do not.

[¶20] Mr. O'Halloran's co-defendant, Megan O'Halloran, also testified during the restitution hearing. On direct examination by her counsel, she testified:

> Q.     Was your brother Ryan getting the money from these checks?
> A.     No.
> Q.     Okay. How do you know that?
> A.     I just – I know that neither Ryan or I were receiving any of the money.
> Q.     Who was receiving the money?
> A.     My mother.

[¶21] On cross-examination by the prosecutor, Ms. O'Halloran testified:

> Q.     Okay. And to your knowledge, Ryan maybe received money once?
> A.     To my knowledge, yeah. Once.
> Q.     Okay.
> A.     And I'm not even completely sure as to how much or anything.
> Q.     Okay. But it wasn't any more than that?
> A.     No.

[¶22] The State presented no evidence that Mr. O'Halloran received or otherwise benefited from the scheme in the amount of $2,600.15. The evidence therefore does not support the district court's order requiring Mr. O'Halloran to pay restitution of $2,600.15, and we must reverse the restitution order. In so ruling, we do not remand for further proceedings on restitution and instead order the restitution order against Mr. O'Halloran vacated. *See Hite*, ¶ 15, 172 P.3d at 741 (quoting *Penner*, ¶ 12, 78 P.3d at 1049) ("The State is not entitled to a second opportunity to prove restitution."); *Crapo*, ¶ 19, 172 P.3d at 399 ("[B]ecause of the double jeopardy implications, restitution orders overturned for failure of proof will not be remanded for the purpose of relitigating the restitution issue.").

[¶23] Because we have reversed and vacated the restitution order, we need not address Mr. O'Halloran's speedy sentencing argument. We do note, however, that the delay between Mr. O'Halloran's June 2, 2011 change of plea and sentencing hearing, and the district court's entry of the Judgment, Sentence and Probation Order for Defendant Ryan O'Halloran on May 20, 2013, may create some confusion in the record. The record of the June 2, 2011 hearing indicates that Mr. O'Halloran's one-year term of unsupervised probation began immediately. The May 20, 2013 order, however, purports to impose a one-year term of unsupervised probation. The State's appellate brief indicates that Mr. O'Halloran completed his unsupervised probation by June 2012. To clarify the record as

to the dates of Mr. O'Halloran's unsupervised probation, we direct the district court to enter an order specifying that Mr. O'Halloran's probation has been discharged.

## CONCLUSION

[¶24] We find that the restitution order was not supported by sufficient evidence and therefore reverse and vacate the restitution order. To clarify the record as to the dates of Mr. O'Halloran's unsupervised probation, we also direct the district court to enter an order specifying that Mr. O'Halloran's probation has been discharged.