# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 30

### OCTOBER TERM, A.D. 2021

### March 1, 2022

ALEXANDER VINCENT RAY CAVE,

Appellant
(Defendant),

v.

S-21-0147

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
The Honorable Suzannah G. Robinson, Judge

*Representing Appellant:*
> Nathan W. Jeppsen, Law Office of Nathan W. Jeppsen, Rock Springs, Wyoming.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\*Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Alexander Vincent Ray Cave pled no contest to aggravated assault and battery and was ordered to pay $63,428.29 in restitution to Rafael Magana, the victim of his offense. Mr. Cave appeals from the district court's award of restitution to Mr. Magana.  We affirm.

## ISSUES

[¶2]     Mr. Cave raises three issues which we re-state and re-order as follows:

> 1.  Did the district court have authority to award restitution to Mr. Magana?
>
> 2.  Was there sufficient evidence supporting the district court's award of restitution to Mr. Magana?
>
> 3.  Did the district court abuse its discretion by failing to consider Mr. Magana's comparative fault in determining the amount of restitution?

## FACTS

[¶3]     Mr. Cave stabbed Mr. Magana five times during a drug transaction.  Mr. Magana was treated for his injuries at Memorial Hospital of Sweetwater County.  He was later billed $74,678.27 for his treatment.  The Wyoming Attorney General Office's Division of Victim Services (DVS) paid $11,249.98 of these expenses.

[¶4]     The State charged Mr. Cave with attempted second-degree murder.  The parties eventually entered into a plea agreement wherein Mr. Cave agreed to plead no contest to an amended charge of aggravated assault and battery in exchange for a sentence of 6-10 years imprisonment, suspended in favor of 5 years of supervised probation.  With respect to restitution, the agreement stated "tbd," which based on statements made by the court and the parties at the change of plea hearing, we understand to be the abbreviation for "to be determined."          Merriam-Webster          Dictionary,          https://www.merriam-webster.com/dictionary/TBD (last visited Feb. 16, 2022).  The court accepted Mr. Cave's no contest plea.

[¶5]     Prior to sentencing, Mr. Magana provided the State the medical bills for the treatment he received following the assault and battery.  The State, in turn, filed a written request for restitution which outlined the medical expenses Mr. Magana incurred as a result of the assault and battery and the amount of those expenses paid by DVS.  The State requested $11,249.98 be paid to DVS and $63,428.29 be paid to Mr. Magana.  The State attached the medical bills to its request.

1

[¶6]    At sentencing, Mr. Cave did not dispute the amount owed to DVS or the validity of Mr. Magana's medical bills.  He also agreed the medical bills stemmed from the treatment Mr. Magana received following the assault and battery.  However, Mr. Cave argued he did not have the present or future ability to pay restitution; there was no evidence as to the amount Mr. Magana or a third-party insurer had paid toward the medical bills; there was no evidence as to whether Mr. Magana will ultimately be responsible for paying the bills or if they will be reduced or discharged in a future bankruptcy; and the court should consider Mr. Magana's comparative fault in that he actively participated in a drug transaction where bodily harm can occur.

[¶7]    The district court found Mr. Cave had the ability to pay restitution and declined to apply comparative fault principles to determine the amount of restitution.  It also decided "whether or not Mr. Magana has made any payments to the [medical] providers" was "really not [its] concern.  It's still a loss that he has as a result and he owes the money to other individuals . . . ."  The court sentenced Mr. Cave in accordance with the parties' plea agreement and ordered him to pay $74,678.27 in restitution—$11,249.98 to DVS and $63,428.29 to Mr. Magana.  Mr. Cave timely appealed.

## STANDARD OF REVIEW

[¶8]    We review a district court's authority to order restitution "'under a *de novo* statutory interpretation standard, because a court has only that authority to act which is conferred by the subject statute.'"  *O'Halloran v. State*, 2014 WY 95, ¶ 11, 331 P.3d 121, 125 (Wyo. 2014) (quoting *Frederick v. State*, 2007 WY 27, ¶¶ 14-15, 151 P.3d 1136, 1141 (Wyo. 2007)) (other citation omitted).  "Challenges to the factual basis for a restitution order are reviewed for procedural error or clear abuse of discretion."  *Freeman v. State*, 2019 WY 86, ¶ 9, 448 P.3d 194, 196 (Wyo. 2019) (citing *O'Halloran*, ¶ 11, 331 P.3d at 125).  "'A court abuses its discretion only when it could not reasonably decide as it did.'"  *Steffey v. State*, 2019 WY 101, ¶ 18, 449 P.3d 1100, 1105 (Wyo. 2019) (quoting *Berger v. State*, 2017 WY 90, ¶ 7, 399 P.3d 621, 623 (Wyo. 2017)) (other citation omitted).  "'An abuse of discretion can [also] exist if the wrong law has been applied, the correct law has been applied but incorrectly interpreted, or if the correct law has been improperly applied.'"  *Id.* (quoting *Grove v. Pfister*, 2005 WY 51, ¶ 6, 110 P.3d 275, 278 (Wyo. 2005)) (other citation omitted).

## DISCUSSION

[¶9]    The district court found Mr. Cave had the ability to pay restitution.  Mr. Cave has not appealed from that finding.  As a result, the court was required to order him to "pay restitution to each victim."  Wyo. Stat. Ann. § 7-9-102 (LexisNexis 2021) ("In addition to any other punishment prescribed by law the court shall, upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as determined under W.S. 7-9-103 and 7-9-114 unless the court specifically finds that the defendant has

2

no ability to pay and that no reasonable probability exists that the defendant will have an ability to pay."). *See also, Solis v. State*, 2010 WY 165, ¶ 8, 245 P.3d 323, 325 (Wyo. 2010) ("As part of the sentencing process, a trial court is required to order a defendant to pay restitution to each victim unless the court specifically finds that the defendant has no ability to pay and no reasonable possibility exists that he will have an ability to pay.").

[¶10]   Mr. Cave does not dispute the district court's order of restitution to DVS.  He argues only that the court erred in awarding restitution to Mr. Magana.  His argument is three-fold.

[¶11]   First, Mr. Cave claims the court was without authority to award restitution to Mr. Magana because no request for restitution was made by Mr. Magana or on his behalf as required by Wyo. Stat. Ann. § 7-9-103(a) (LexisNexis 2021).  That statute provides:  "As part of the sentencing process including deferred prosecutions under W.S. 7-13-301, in any misdemeanor or felony case, the prosecuting attorney shall present to the court any claim for restitution submitted by any victim."  Mr. Cave acknowledges the State filed a written request for restitution to be made to Mr. Magana in the amount of his medical expenses not paid for by DVS.  However, he maintains the State clarified at sentencing that its request was on behalf of Mr. Magana's medical providers, not Mr. Magana.

[¶12]   The prosecutor stated at sentencing:  "[I]f the [c]ourt does order [Mr. Cave to pay] the full amount [of Mr. Magana's medical expenses] we would probably have to attribute the $63,000 to the direct providers of the services provided to Mr. Magana because if not Mr. Magana would be receiving [it] and he has not paid [his medical expenses] as of yet."  We do not interpret this statement as the prosecutor withdrawing the State's written request for restitution to be made to Mr. Magana.   Rather, the prosecutor was simply acknowledging Mr. Magana owes the money to his medical providers.  In any event, the State's written request for restitution for Mr. Magana satisfied § 7-9-103(a) and gave the district court the authority to award restitution to him, even if the State also suggested the medical providers were ultimately entitled to the money. *See Whitten v. State*, 2005 WY 55, ¶¶ 18, 22, 110 P.3d 892, 897 (Wyo. 2005) (affirming the district court's modification of its sentencing order to require restitution be paid to the victim, rather than the victim's insurer, even though the victim never requested restitution).

[¶13]   Second, Mr. Cave contends the district court erred in awarding restitution to Mr. Magana because the State failed to show Mr. Magana suffered any "actual pecuniary damage" as a result of the assault and battery as required by § 7-9-103(b).  According to him, there was no evidence Mr. Magana had paid any of his medical bills or that he had agreed to, or was otherwise legally obligated to, pay them.  Even if Mr. Magana is legally obligated to pay the bills, Mr. Cave asserts it is highly likely Mr. Magana will file for bankruptcy and have those bills discharged.

[¶14]   Upon receiving the State's request for restitution, the district court was required to "fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity . . . ."  Section 7-9-103(b).  "'Pecuniary damage' means all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event . . . ."  Wyo. Stat. Ann. § 7-9-101(a)(iii) (LexisNexis 2021).  Evidence is sufficient to support a district court's restitution order "'if it affords a reasonable basis for estimating a victim's loss.'"  *Voelker v. State*, 2018 WY 72, ¶ 16, 420 P.3d 1098, 1100 (Wyo. 2018) (quoting *Smiley v. State*, 2018 WY 50, ¶ 13, 417 P.3d 174, 177 (Wyo. 2018)) (other citations omitted).  "We view the evidence in the light most favorable to the State, affording it the benefit of every reasonable inference that can be fairly drawn and disregarding any conflicting evidence or interpretations presented by the defendant."  *Id.* (citing *Merkison v. State*, 996 P.2d 1138, 1142 (Wyo. 2000)).

[¶15]   Mr. Cave does not dispute that Mr. Magana could have recovered damages in the amount of his medical bills in a civil action arising out of the assault and battery.  *See Glover v. State*, 2007 WY 169, ¶ 10, 169 P.3d 553, 556 (Wyo. 2007) ("Pursuant to [the criminal restitution statutes], the district court was required to order Mr. Glover to pay all or part of the damages [the victim] could recover against him in a civil action for battery, including reasonably foreseeable future damages . . . .  There is no question [the victim] could have recovered damages in the amount of her medical bills in a civil action arising out of the battery, including reasonably foreseeable future bills.").  He also admitted at sentencing that Mr. Magana's medical bills were valid and stemmed from the medical treatment he received following the assault and battery.  A victim's medical bills are sufficient evidence supporting a district court's award of restitution.  *Id.*, ¶ 11, 169 P.3d at 557 ("[T]he victim's advocate testimony reciting [the victim's] medical bills afforded a reasonable basis for the district court's restitution order.  We hold the evidence was sufficient to support the order.").  *See also, Smith v. State*, 2012 WY 130, ¶ 11, 286 P.3d 429, 433 (Wyo. 2012) (district court properly exercised its discretion in awarding restitution where "the victims presented verifiable evidence consisting of bills from medical providers and vehicle repair shops and victim testimony of the damages they had suffered due to the appellant's criminal conduct").

[¶16]   At sentencing, the State informed the district court that Mr. Magana had not yet paid any of his medical bills.  The medical bills are addressed to Mr. Magana and there is no indication a third-party insurer had made any payments toward them on his behalf.  There was a reasonable basis for the district court to determine Mr. Magana was responsible for paying his medical bills.  In any event, even if a third-party insurer had paid a portion or all of the bills, such insurer would be a "'victim' . . . only if the insurer has no right of subrogation and the insured has no duty to pay the proceeds of restitution to the insurer[.]'" Section 7-9-101(a)(v).  There was no evidence of a third-party insurer, let alone that such insurer did not have a right of subrogation.  As such, the district court properly ordered Mr. Cave to pay restitution to Mr. Magana.  *See Hudson v. State*, 2020 WY 86, ¶ 9, 466 P.3d 839, 841 (Wyo. 2020) ("Both parties agree that Mr. Hudson caused $16,998 worth of

4

damage to Mr. Goodman's truck and that his insurance company paid him for that damage. But because the record contains no evidence of a subrogation right, or the lack thereof, the district court properly required Mr. Hudson to pay restitution to [Mr. Goodman].").  *See also, Whitten*, ¶ 21, 110 P.3d at 897 (because there was no evidence in the record regarding subrogation rights of State Farm, the district court was required to order restitution be paid to the victim); *Meerscheidt v. State*, 931 P.2d 220, 227 (Wyo. 1997) ("In light of the absence of evidence [indicating whether the insurers in this case did or did not have subrogation rights], we are compelled to reverse the district court's awards of restitution to the insurers [and to] remand the case and direct the district court to modify the judgments and sentences so that the entire restitution amount is awarded to the [victims].").

[¶17]  That Mr. Magana may discharge all or a portion of his medical bills in a future bankruptcy proceeding is entirely speculative.  Nevertheless, even if he does so, it would not reduce the amount Mr. Cave is required to pay in restitution because he is "still responsible for the actual pecuniary damage caused by [his] criminal activities."  *Cf. Meerscheidt*, 931 P.2d at 227 (noting "[o]ur ruling [that restitution should have been awarded to the victims and not their insurers] does not reduce the amount which the appellants are required to pay in restitution because, whether they pay the restitution to the true victims or to the insurance companies, they are still responsible for the actual pecuniary damage caused by their criminal activities").  Whether Mr. Magana has already paid his medical providers, or has yet to do so, and whether he might file for bankruptcy are entirely irrelevant to the issue of whether he incurred those liabilities as a result of Mr. Cave's criminal act.

[¶18]  Finally, Mr. Cave argues the district court abused its discretion in failing to consider Mr. Magana's comparative fault in determining the amount of restitution.  He argues the definition of "pecuniary damages" requires us to consider those damages the victim could recover in a civil action arising out of the same facts or events.  Because pecuniary damages in a civil action are subject to the comparative fault statute, Wyo. Stat. Ann. § 1-1-109 (LexisNexis 2021), Mr. Cave tells us the district court should have applied that statute to determine Mr. Magana's fault and reduced the restitution award accordingly.

[¶19]  Our comparative fault statute requires a factfinder to determine "the percentage of fault attributable to each actor."  Section 1-1-109(c).  It defines "actor" as "a person or other entity, including the [plaintiff], whose fault is determined to be a proximate cause of the death, injury or damage, whether or not the actor is a party to the litigation."  Section 1-1-109(a)(i).  "'Fault' includes acts or omissions, determined to be a proximate cause of death or injury to person or property, that are in any measure negligent, or that subject an actor to strict tort or strict products liability, and includes breach of warranty, assumption of risk and misuse or alteration of a product[.]"  Section 1-1-109(a)(iv).  The damages a plaintiff receives "shall be diminished in proportion to the amount of fault" attributed to that plaintiff by the factfinder.  Section 1-1-109(b).

5

[¶20]  In *Bd. of Cnty. Comm'rs of Teton Cnty. v. Bassett*, 8 P.3d 1079, 1083-84 (Wyo. 2000), we concluded § 1-1-109 requires the factfinder to "compare all species of culpable conduct," including willful and wanton conduct, in assessing fault.  There, Wyoming Highway Patrol officers set up a roadblock to catch a fleeing suspect.  *Id.* at 1081-82. Although the officers knew the suspect's vehicle was speeding toward the plaintiffs' vehicle, they failed to warn the plaintiffs of the danger and waved the plaintiffs' vehicle through the roadblock.  *Id.*  Soon thereafter, the suspect ran the roadblock and crashed into the plaintiffs' vehicle, injuring them.  *Id.*  The plaintiffs sued the officers alleging they were negligent in failing to warn them of the danger and in operating the roadblock.  *Id.*  On appeal, we decided the district court erred by failing to require the jury to compare the suspect's willful and wanton conduct with the officers' negligence in apportioning fault under § 1-1-109.  *Id.* at 1083-84.

[¶21]  However, in *Erdelyi v. Lott*, 2014 WY 48, ¶ 44, 326 P.3d 165, 177 (Wyo. 2014), we determined § 1-1-109 does not allow a factfinder to "compare a [plaintiff]'s negligence or comparative fault with the willful act of the perpetrator in a fraud case."  We reasoned:

> One who has committed fraud should not be allowed to escape liability for his wrongful conduct by shifting the responsibility to the victim. Such a result is contrary to public policy. Absent clear statutory language showing the legislature intended the negligence of a fraud victim to be compared to the conduct of the perpetrator, thereby potentially reducing the latter's liability for his intentionally wrongful acts, we decline to hold that § 1–1–109 is a proper matter for a jury instruction in a fraud case.

*Id.*, ¶ 43, 326 P.3d at 177.  In so concluding, we limited *Bassett* to its facts.  *Id.*, ¶ 41, 326 P.3d at 176.  We determined *Bassett* "did not address whether in an *intentional tort case* any *negligence on the part of the [plaintiff]* should be compared with the *willful act of the defendant*" but rather "addressed only whether a non-party actor whose willful acts were a proximate cause of the [plaintiffs'] injuries should be compared with the *defendants' negligence* to apportion fault and liability."  *Id.*, ¶ 41, 326 P.3d at 176 (last emphasis added).  We determined, "[i]n that context, it makes sense to include the non-party actor because it ensures [] *negligent defendants* are not held liable for the intentional acts of another."  *Id.* (emphasis added).

[¶22]  In this case, Mr. Cave pled no contest to assault and battery, an intentional tort. *Krenning v. Heart Mountain Irr. Dist.*, 2009 WY 11, ¶ 29, 200 P.3d 774, 783 (Wyo. 2009); *Jung-Leonczynska v. Steup*, 782 P.2d 578, 583 (Wyo. 1989).  *See also*, 74 Am. Jur. 2d Torts § 17 ("An intentional tort, as opposed to negligence, is one in which the actor has the specific intent to inflict injury or engages in conduct that is substantially certain to result in injury.").  As a result, this case does not involve a negligent defendant like in *Bassett*.

6

Rather, Mr. Cave is an intentional tortfeasor akin to the fraudster in *Erdelyi*. Applying our reasoning in *Erdelyi*, we conclude it would be against public policy to allow an intentional tortfeasor like Mr. Cave to "escape liability for his wrongful conduct by shifting the responsibility to [his] victim." *Erdelyi*, ¶ 43, 326 P.3d at 177. Other jurisdictions have similarly refused to apply comparative fault principles when the tortfeasor has committed an intentional tort. *See, e.g., State v. Roache*, 920 N.W.2d 93, 103 (Iowa 2018) ("An intentional wrongdoer cannot raise the victim's comparative fault as a defense." (citations omitted)); *McLain v. Training & Dev. Corp.*, 572 A.2d 494, 497 (Me. 1990) ("We have never recognized contributory or comparative negligence as a defense to the intentional tort of assault and battery and we decline to do so now."); *Fitzgerald v. Young*, 105 Idaho 539, 541, 670 P.2d 1324, 1326 (Ct. App. 1983) ("It is a well-settled rule that the negligence of a plaintiff is not a defense available to a defendant who has committed an intentional tort."). *See also*, Restatement (Second) of Torts § 481 (1965) ("The plaintiff's contributory negligence does not bar recovery against a defendant for a harm caused by conduct of the defendant which is wrongful because it is intended to cause harm to some legally protected interest of the plaintiff or a third person."). Accordingly, absent clear language in § 1-1-109 demonstrating the legislature intended a victim's fault to be compared to the conduct of an intentional tortfeasor, "thereby potentially reducing the latter's liability for his intentionally wrongful acts," we conclude the district court did not abuse its discretion by failing to consider Mr. Magana's fault in determining the amount of restitution. *Erdelyi*, ¶ 43, 326 P.3d at 177.

## CONCLUSION

[¶23] The district court had the authority to order Mr. Cave to pay restitution to Mr. Magana and there was sufficient evidence supporting its restitution award. The court did not abuse its discretion by failing to consider Mr. Magana's comparative fault in determining the amount of restitution. We affirm the district court's order compelling Mr. Cave to pay $63,428.29 in restitution to Mr. Magana.